**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**VICTORIA MURPHY,**

      **Plaintiff,**

v.                                 CIVIL ACTION NO. 2:23-cv-00094

**MOUNTAINTOP ATV RENTALS & TOURS LLC,**
d/b/a ATVenture Power Sports, d/b/a Mountaintop Adventures,
a West Virginia limited liability corporation;
**TWIN HOLLOW CAMPGROUND, INC.,**
a West Virginia corporation,
and **CAMERON ELLIS,**

      **Defendants.**

## COMPLAINT

NOW COMES the Plaintiff, Victoria Murphy, by counsel, Philip A. Reale, II and the Law Office of Philip A. Reale, PLLC, and for his Complaint against the above-named Defendants states as follows:

**Parties, Jurisdiction, and Venue**

1. The Plaintiff, Victoria Murphy, is and was at all times relevant hereto, a resident of Tioga County, Pennsylvania.

2. Defendant Mountaintop ATV Rentals & Tours LLC (hereinafter "Mountaintop"), d/b/a ATVenture Power Sports, d/b/a Mountaintop Adventures, is a West Virginia limited liability corporation with its principal place of business at 703 Twin Hollow Branch Road, Gilbert, Mingo County, West Virginia.

3. Defendant Twin Hollow Campground, Inc. (hereinafter "Twin Hollow") is a West Virginia corporation with its principal place of business at 703 Twin Hollow Branch Road, Gilbert, Mingo County, West Virginia.

4. Defendant Cameron Ellis, upon information and belief, is and was a resident of Gilbert, Mingo County, West Virginia. Defendant Cameron Ellis, upon information and belief, at all relevant times was and is the owner, member, and manager of Defendant Mountaintop.

5. Jurisdiction is proper pursuant to 28 U.S.C. §1332, in that diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.

6. Venue is properly vested with this Court in that one or more defendants reside within the Southern District of West Virginia, pursuant to 28 U.S.C. §1391.

**FACTS**

7. Plaintiff, Victoria Murphy, along with her boyfriend, on or about Sunday, March 21, 2021, traveled from her home in Wellsboro, Pennsylvania, to Defendant Twin Hollow Campground near Gilbert, Mingo County, West Virginia, to stay and explore the Hatfield and McCoy Trail using her all-terrain, side-by-side, vehicle.

8. Prior to her visit, Plaintiff spoke with Donna Ellis, President of Defendant Twin Hollow, who encouraged Plaintiff to visit the campground website where she could see the many activities offered at Twin Hollow's premises.

9. Prominently featured on Defendant Twin Hollow's website are ATV rentals and guided tours offered by Defendant Mountaintop, which advertises itself as "West Virginia's largest [side-by-side ATV] fleet" that is "located onsite at Twin Hollow Campground and Cabins."

10. Defendants advertised to Plaintiff that on Tuesday, March 23, that they could sign up for a guided tour to see "wild horses" and watch the sunset for a cost of $40.

11. Believing this would be a fun experience, and trusting that Defendants had taken appropriate precautions to ensure the safety of their customers, Plaintiff signed up for the evening tour.

12. Prior to departing for the guided tour offered by Defendants, who upon information and belief was Defendant Cameron Ellis, provided some general information concerning where the group would be traveling and the sites that would be seen along the route, including the so-called "wild horses."

13. At no time did Defendants provide any safety information, training, or disclose any dangers that may be encountered by interacting with the horses that were located along the route.

14. Upon information and belief, no employee of Defendant had any prior training that would even qualify them to provide any safety instruction relative to being around "wild horses."

15. The riders on the tour were guided and supervised by an employee, agent, and/or representative of Defendants at all times.

16. Upon arriving at the location where the horses were located, indicating that the horses were not, in-fact, "wild," to Plaintiff's sad astonishment, the horses appeared to be neglected and emaciated animals that had simply been abandoned by their owners.

17. The employee of Defendants' then distributed bags of carrots to the customers, including Plaintiff, encouraging that Plaintiff interact and feed the horses.

18. Trusting Defendants' employee, and following his instructions, Plaintiff approached the horses to begin feeding them.

19. After attempting to feed one horse, Plaintiff moved back toward her ATV to wait while the rest of the customers finished feeding the horses. Plaintiff then began to turn and pivot to walk away, when suddenly she was violently kicked by a horse with such force that it threw her several feet in the opposite direction.

20. Plaintiff experienced instant extreme pain in her right leg, which immobilized Plaintiff.

21. Several members of the tour group aided in lifting Plaintiff from the ground and sat her down on the tailgate of an ATV and began providing Plaintiff first aid from items that the members of the group had in their personal ATVs, such as ice packs, Advil, and electrical tape to secure the ice pack.

22. Defendants did not have any first aid supplies on the tour and/or neglected to offer them to Plaintiff following her injury.

23. In fact, the only comment that Defendants' employee had for Plaintiff at the time was to tell her, "I guess you aren't a horse whisperer, are you?"

24. Upon information and belief, Defendants' employee, who guided the tour, and made fun of Plaintiff's injuries, also did not bother to report the incident to Defendants upon returning to the campground, and when Plaintiff's boyfriend attempted to discuss the incident with Defendants, his concerns were ignored.

25. The following morning, Plaintiff's pain and swelling was getting worse, and Plaintiff decided to cut her trip short so that she could return home to seek medical attention.

26. As a result of Defendants' aggravated failure provide for the safety of its customers, Plaintiff sustained severe and permanent injuries, including a broken right leg, which required has required multiple surgeries and painful rehabilitation.

27. Since the negligent acts of Defendants caused these severe and permanent injuries, Plaintiff continues to experience severe pain and suffering and mental anguish, as well as the loss of the ability to enjoy life as she once did.

28. Plaintiff has incurred and will incur in the future significant medical costs and expenses related to her injuries.

### **Count I – Negligence**

29. Plaintiff incorporates by reference as reasserts all previous allegations contained in this Complaint as if fully set forth herein.

30. Defendants, as owners and/or operators of the premises that provided guided ATV tours to their guests, had a duty to ensure the safety of its guests and invitees while on the premises of Defendants and while taking patrons on guided tours.

31. Defendants breached such duty in that Defendants, by and through its owners, agents, and/or employees:

    a. Knew or should have known of the risks of serious harm that could occur to guests and invitees, such as Plaintiff, by permitting and encouraging customers to interact with horses on a tour guided by Defendants without having any training, safety precautions, or other means of protecting guests;

    b. Failing to have any safety policies in place with regard to interaction with horses on its guided tours;

    c. Failing to warn Plaintiff of the potential dangers associated with interacting with the horses that were a designated stop along Defendants' guided tours;

    d. Knowingly providing guided tours with employees, agents, or representatives without proper safety training, or knowledge;

    e. Failing to provide, or having available, first aid items to treat injuries while on Defendants' guided tours.

32. Defendants' acts and omissions were conducted with a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

33. As a result of Defendants' negligent acts and omissions, Plaintiff sustained serious, severe, and permanent injuries.

## Count II – Joint Venture

34. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

35. Upon information and belief, Defendants Twin Hollow and Mountaintop associated to carry out a single business enterprise for profit of operating an ATV resort, whereby Defendants combined their property, money, effects, skill and knowledge.

36. Each Defendant contributed something promotive to the enterprise.

37. Said venture arose out of an express or implied contractual relationship between the parties to share profits and jointly manage and control the business enterprise.

38. Because of Defendants' joint venture, they are jointly and severally liable for all obligations pertaining to the venture.

39. Defendants negligently and knowingly operated the enterprise in an unsafe manner by promoting and conducting ATV tours without proper safety measures in place for its customers as set forth in this Complaint.

40. As a direct and proximate result of such joint venture, Plaintiff has sustained and is thereby entitled to recover such damages as are more fully set forth below.

## Count III – Piercing the Corporate Veil

41. Plaintiff incorporates by reference as reasserts all previous allegations contained in this Complaint as if fully set forth herein.

42. Upon information and belief, there exists such a unity of interest and ownership that the separate personalities of Defendant Mountaintop and of Defendant Cameron Ellis no longer exist.

43. An injustice and inequitable result would occur if the veil of Defendant Mountaintop is not pierced.

44. Defendants Cameron Ellis as owner, manager, and acting agent of Defendant Mountaintop exercised full control over Defendant Mountaintop and actively participated in Defendant Mountaintop's management.

45. Defendant Cameron Ellis, upon information and belief, failed to adequately insure Defendant Mountaintop and left Defendant Mountaintop undercapitalized for the reasonable risks associated with the corporate undertaking.

46. Moreover, upon information and belief, Defendant Mountaintop does not carry liability insurance coverage for the primary risks of the business, including personal injury claims.

47. Defendant Cameron Ellis operated Defendant Mountaintop as a mere alter ego of himself.

48. As a result, this Court is entitled to disregard the corporate fiction and hold Defendants Cameron Ellis personally liable for the debts of Defendant Mountaintop.

## **Damages**

1. Plaintiff incorporates by reference as reasserts all previous allegations contained in this Complaint as if fully set forth herein.

2. As a direct and proximate result of Defendants' wrongful conduct, as more fully described above, Plaintiff is entitled to recover the following damages:

    a. Damages for severe and permanent personal injuries;

    b. Medical expenses, both past and future;

    c. Lost wages, both past and future;

    d. Severe and significant emotional distress, mental pain and anguish;

    e. Damages for severe and permanent scarring and disfigurement;

  f. Damages for embarrassment, humiliation, annoyance, inconvenience, loss of dignity, loss of enjoyment of life;

  g. Punitive damages in the maximum allowable by West Virginia law;

  h. All attorney's fees and costs incurred in prosecuting these claims;

  i. Pre-judgment and post-judgment interest; and

  j. Any and all other damages permitted by applicable law.

WHEREFORE, Plaintiff Victoria Murphy demands judgment against Defendants in such damages as will fully and sufficiently compensate him for all of her injuries and losses together with punitive damages, reasonable attorney's fees, pre- and post-judgment interest, costs, and any other further relief as this Court deems just and proper.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

               **VICTORIA MURPHY**
               By Counsel,

               /s/ Philip A. Reale, II
               Philip A. Reale, II (WVSB #11372)
               Law Office of Philip A. Reale, PLLC
               300 Summers Street, Suite 980
               Charleston, West Virginia 25301
               P – (304) 414-3104
               F – (304) 342-1893
               philip@wvreale.com