IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VICTORIA MURPHY,

                Plaintiff,

v.                                                CIVIL ACTION NO.  2:23-cv-00094

MOUNTAINTOP ATV RENTALS & TOURS, et al.,

                Defendants.

**ORDER**

Pending before the Court is Defendant Twin Hollow Campground, Inc.'s Motion to Dismiss. (ECF No. 8.) For the reasons set forth below, the motion is **GRANTED**.

           *I.*      *BACKGROUND*

The complaint alleges that on March 23, 2021, Plaintiff Victoria Murphy, a Pennsylvania resident, was staying at Twin Hollow Campground near Gilbert, West Virginia. (ECF No. 1 ¶ 7.) Before arriving at the campground, Donna Ellis, Twin Hollow's president, spoke with Murphy and "encouraged [her] to visit the campground website" to "see the many activities offered at Twin Hollow's premises." (*Id.* ¶ 8.) Among other things, the website featured "ATV rentals and guided tours offered by Defendant Mountaintop [ATV Rentals & Tours]." (*Id.* ¶ 9.) The advertisement for Mountaintop described it as "onsite at Twin Hollow Campground and Cabins" and offering

1

tours featuring "wild horses."[1]  (*Id.* ¶¶ 9-10.)  "Believing this would be a fun experience," Murphy signed up for an evening tour with Mountaintop.  (*Id.* ¶ 11.)

During this tour, Murphy was allegedly injured at the first horse sighting after being "encourag[ed]" by her tour guide, Defendant Cameron Ellis, to feed the horses carrots he provided.  (ECF No. 1 ¶ 17.)  After feeding one of the horses, Murphy began to move away from the animals when she was "suddenly" and "violently kicked by a horse."  (*Id.* ¶ 19.)  The kick threw Murphy several feet, and she suffered "extreme pain in her right leg" and became "immobilized" upon hitting the ground.  (*Id.* ¶ 20.)  Murphy received rudimentary care for her injuries from other participants on the tour but none from any of the Defendants.  (*Id.* ¶¶ 21-23.)  On top of that, Murphy alleges that Cameron Ellis mocked her, did not report the incident, and that concerns shared with the other Defendants were ignored.  (*Id.* ¶¶ 23-24.)

As a result of being kicked, Murphy "sustained severe and permanent injuries, including a broken right leg" requiring "multiple surgeries and painful rehabilitation."  (ECF No. ¶ 26.)  Murphy now continues to "experience severe pain and suffering and mental anguish, as well as the loss of the ability to enjoy life as she once did."  (*Id.* ¶ 27.)  Murphy also alleges that she "incurred and will incur in the future significant medical costs and expenses related to her injuries."  (*Id.* ¶ 28.)

Seeking to recoup her costs and damages, Murphy brought this action on February 7, 2023.  (ECF No. 1.)  Her complaint alleges negligence, aims to hold all Defendants liable as part of a supposed joint venture, and looks to pierce the corporate veil and show that Mountaintop and

---

[1] Later in the complaint, Murphy alleges that the horses "were not, in-fact, 'wild.'" (*Id.* ¶ 16.)  However, the allegations of misrepresented horses have no bearing on the claims which were actually brought, and the Court notes it here only for completeness.

2

Cameron Ellis are not truly separate entities. (*Id.*) In response, Twin Hollow filed the pending motion to dismiss on March 3, 2023. (ECF No. 8.) In turn, Murphy filed her opposition on March 13, 2023, (ECF No. 10), and Twin Hollow filed its reply on March 20, 2023, (ECF No. 11). As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

3

### III. DISCUSSION

Murphy's complaint is styled as containing three counts, but in truth, there is only one cause of action alleged: negligence. Both Count Two—Joint Venture—and Count Three—Piercing the Corporate Veil—simply lay out theories by which Murphy claims different parties should be held accountable for the negligence alleged in Count One. Because Murphy has not alleged sufficient facts to support her claim of a Joint Venture, this motion by Twin Hollow starts and all but ends with Count Two. Murphy's attempt to shoehorn Twin Hollow into a negligence claim clearly aimed at Mountaintop does not change this fact. Still, the Court grants leave to amend the complaint as the requirements to do so are met.

#### A. Count II—Joint Venture

The Court begins with Murphy's attempt to rope Twin Hollow into Mountaintop's conduct. Murphy alleges that Twin Hollow and Mountaintop "associated to carry out a single business enterprise for profit." (ECF No. 1 ¶ 35.) Under West Virginia law, such an enterprise is known as a "joint venture." *Armor v. Lantz*, 535 S.E.2d 737, 742 (W. Va. 2000). Joint ventures are "an association of two or more persons" to "carry out a single business enterprise for profit," for which purpose the parties "combine their property, money, effects, skill, and knowledge." *Id.* These sorts of ventures also require a contract, but it "may be oral or written, express or implied." *Id.* If these elements are shown, the members of the venture are "jointly and severally liable for all obligations pertaining to the venture, and the actions of the joint venture bind the individual co-venturers." *Id.* at 743. However, Murphy fails to allege facts sufficient to sustain a claim that a joint venture exists between Twin Hollow and Mountaintop.

4

The first and most fatal flaw in Murphy's pleading is that it lacks factual allegations that Twin Hollow and Mountaintop shared profits in any way. A stray claim that a "venture arose . . . to share profits" is not enough to allege that the Defendants *actually* share profits. (ECF No. 1 ¶ 37.) Murphy would need to allege facts demonstrating that there is a real and binding "agreement" to "share in the profits and losses" of the enterprise. *Pyles v. Mason Cnty. Fair, Inc.*, 806 S.E.2d 806, 812 (W. Va. 2017) (citation omitted). Yet nothing in the complaint comes near establishing that the two Defendants here "agreed to share profits and losses." *Kerns v. Slider Augering & Welding, Inc.*, 505 S.E.2d 611, 619 (W. Va. 2000). This matters because the "sharing of profits is generally considered essential to the creation of a joint []venture," so the failure to allege facts supporting such an agreement is on its own enough to doom Count II. *Pownall v. Cearfoss*, 40 S.E.2d 886, 893-94 (W. Va. 1946).

The absence of a profit-sharing agreement is not the only defect in this count, though. The relationship between Twin Hollow and Mountaintop lacks the other key feature of a joint venture as well: "equal control over the common commercial pursuit." *Armor*, 535 S.E.2d at 745. Courts have "emphasized the necessity of" this element to show a joint venture. *Id.* Despite this, the complaint makes no substantive allegations that Twin Hollow had any control over Mountaintop's business or that Mountaintop had any control over Twin Hollow's, let alone that they both had equal control.

To the contrary, the complaint makes it clear that Twin Hollow had no control over the operations of Mountaintop. Instead, the tour business was exclusively operated by Cameron Ellis, an "agent of Defendant Mountaintop" who "exercised *full control* over Defendant Mountaintop." (ECF No. 1 ¶ 44 (emphasis added).) Murphy's allegation that Cameron Ellis had full control over

5

Mountaintop's activities leaves no room for Twin Hollow to have the requisite "control required for imputing negligence under a joint enterprise theory." *Armor*, 535 S.E.2d at 745 (quoting *Slaughter v. Slauther*, 379 S.E.2d 98, 101 (N.C. 1989)).

Finally, Murphy makes much of two details she claims show a joint venture. First, that Mountaintop and Twin Hollow share a premises for their businesses, and second, that Twin Hollow "feature[s]" Mountaintop's business on Twin Hollow's website. (ECF No. 1 ¶ 9.) But without more, neither of these facts establish a joint venture under West Virginia law. While sharing property may be a "feature" of a joint venture, it is not alone sufficient when the other features that "must be combine[d]"—"money, efforts, skill, or knowledge"—are absent. *Armor*, 535 S.E.2d at 743 (citation omitted).

Further, while Twin Hollow's advertisement for Mountaintop may promote Mountaintop's tours, there is nothing gained on Twin Hollow's end. This matters because a joint enterprise requires "each party" to contribute something of value to a "common undertaking." *Armor*, 535 S.E.2d at 743 (citation omitted). Mountaintop is not alleged to have contributed anything to Twin Hollow, nor can it be inferred that Twin Hollow told Murphy about Mountaintop to drum up business for ATV tours.

Rather, it appears Twin Hollow features many local attractions on its website to show potential customers what is in the area to make its campground seem a more attractive place to stay. Still, Twin Hollow's only source of profit is its own business, and the promotion of another local business is not a sign of a joint venture. For instance, if Twin Hollow's website featured a local pizza restaurant and claimed that it was the best pizza for miles, one would not infer there

6

was a joint venture between the two organizations, even if the restaurant had a location at the campground. So too here.

Thus, the allegations in the complaint fail to state a plausible joint venture claim. Murphy's "formulaic recitation of the elements of a [joint venture] will not do" to overcome this. *Iqbal*, 556 U.S. at 678 (citation omitted), *see also Bennett v. Lending Solutions Inc.*, No. 2:10-CV-01201, 2011 WL 4596973, at *4 (S.D. W. Va. Sept. 30, 2011) (dismissing where complaint merely recited the elements of a joint venture claim). Count II is therefore dismissed.

B. *Count I—Negligence Against Twin Hollow*

With Count II disposed of, Count I quickly follows as it has no alternative basis for holding Twin Hollow liable for Murphy's injuries. The entire count arises out of the incident with a horse while Murphy was on a tour with Mountaintop. Murphy tries to sidestep this problem by using the plural "Defendants" to refer to the actions of Mountaintop while on the tour. (*See generally* ECF No. 1.) This conspicuous sleight of hand does not fool the Court though, and it is obvious that Count I is aimed at Mountaintop.

The only possible connection to Twin Hollow is that Murphy alleges Twin Hollow's ownership of the land where the tour was sold is enough to make the campground negligent. It is not. Without more, this does nothing to establish a concrete duty that was breached by Twin Hollow. *See Bennett*, 2011 WL 4596973, at *4. Moreover, the tours were only sold on the premises; they did not occur on it. (*See* ECF No. 1 ¶ 24 (referencing "returning to the campground" following the tour).) As such, Count I is plainly a negligence claim against Mountaintop. A "formulaic recitation of the elements of [negligence]," *Twombly*, 550 U.S. at 555, aimed at

imputing Twin Hollow with Mountaintop's actions is not a plausible claim for relief. Count I is dismissed as to Twin Hollow.

    *C. Leave to Amend Complaint*

In the alternative, Murphy seeks to amend her complaint. Though the complaint lacks the necessary facts and allegations to support its claims, the Court finds that granting leave to amend would create no "prejudice" to Twin Hollow and would not necessarily be "futile." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). Additionally, there is no evidence of "bad faith on the part of" Murphy. *Id.* Finally, the request is bolstered by the fact that the deadline for amendment of pleadings had not yet passed when the request was made. (*See* ECF No. 13.) Considering these factors, the Court follows the general rule and permits Murphy the opportunity to amend her initial pleading. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999).

### IV.    CONCLUSION

For these reasons, the Court **GRANTS** the pending motion to dismiss. (ECF No. 8.) The Complaint as against Twin Hollow is hereby **DISMISSED**, without prejudice. However, Murphy is **GRANTED** leave to amend her complaint within ten days of the date of the entry of this order.

    **IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

    ENTER:    August 17, 2023

THOMAS E. JOHNSTON, CHIEF JUDGE