IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VICTORIA MURPHY,

        Plaintiff,

v.                                CIVIL ACTION NO. 2:23-cv-00094

MOUNTAINTOP ATV RENTALS & TOURS, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Twin Hollow Campground, Inc.'s Motion to Dismiss the Amended Complaint. (ECF No. 25.) For the reasons set forth below, the motion is **GRANTED**.

## I.    BACKGROUND

The amended complaint alleges that on March 23, 2021, Plaintiff Victoria Murphy was staying at Twin Hollow Campground in West Virginia. (ECF No. 21 at 1–2, ¶¶ 1, 7.) Before arriving at the campground, Donna Ellis, Defendant Twin Hollow's president, spoke with Murphy and "encouraged [her] to visit the campground website" to "see the many activities offered at Twin Hollow's premises." (*Id.* at 2, ¶ 8.) Among other things, the website featured "ATV rentals and guided tours offered by Defendant Mountaintop [ATV Rentals & Tours]." (*Id.* at 3, ¶ 9.) Twin Hollow's online advertising of Mountaintop is where most of Mountaintop's business comes from. (*Id.* at ¶ 11.) The advertisement for Mountaintop described it as "onsite at Twin Hollow

1

Campground and Cabins" and that it offered tours featuring "wild horses."[1] (*Id.* at ¶¶ 9, 13.) The advertisement for Mountaintop "is the only ATV rental and tour company" advertised on Twin Hollow's website and Twin Hollow and Mountaintop are described as being "one 'family operation.'" (*Id.* at ¶ 10.)

Murphy signed up for an evening tour with Mountaintop to see "wild horses." (*Id.* at ¶¶ 13–14.) Murphy purchased the tour from Donna Ellis. (*Id.* at ¶ 15.) The purchase was made with a debit/credit card via a transaction that used "Twin Hollow's point-of-sale credit/debit system." (*Id.*) During the tour, Murphy was allegedly injured at the first horse sighting after being "encourag[ed]" by her tour guide, Defendant Cameron Ellis, to feed the horses carrots that he provided. (*Id.* at 4, ¶ 21.) After feeding one of the horses, Murphy began to step away from the animals when she was "suddenly" and "violently kicked by a horse." (*Id.* at ¶ 23.) The kick ultimately threw Murphy several feet, and she suffered "extreme pain in her right leg" and became "immobilized." (*Id.* at 4–5, ¶ 23–24.) Murphy received basic care for her injuries from other visitors on the tour but none from any of the Defendants. (*Id.* at 5, ¶¶ 25–38.) Additionally, Murphy alleges that Defendant Cameron Ellis mocked her, failed to report the incident, and that concerns shared with the other Defendants were ignored. (*Id.* at ¶¶ 27–28.)

As a result of being kicked, Murphy "sustained severe and permanent injuries, including a broken right leg" requiring "multiple surgeries and painful rehabilitation." (*Id.* at ¶ 30.) Murphy continues to "experience severe pain and suffering and mental anguish, as well as the loss of the ability to enjoy life as she once did." (*Id.* at ¶ 31.) Murphy also alleges she "incurred and will incur in the future significant medical costs and expenses related to her injuries." (*Id.* at 6, ¶ 32.)

---

[1] Later in the complaint, Murphy alleges that the horses "were not, in-fact, 'wild.'" (*Id.* at 4, ¶ 20.) However, the allegations of misrepresented horses have no bearing on the claims which were actually brought, and the Court notes it here only for completeness.

2

Murphy commenced this action on February 7, 2023. (ECF No. 1.) Twin Hollow filed a motion to dismiss the complaint on March 3, 2023. (ECF No. 8.) The Court ultimately granted the motion to dismiss without prejudice and gave Murphy leave to amend her complaint. (ECF No. 20.) Murphy then properly filed an amended complaint on August 28, 2023. (ECF No. 21.) Her amended complaint alleges negligence, aims to hold all Defendants liable as part of a supposed joint venture, and looks to pierce the corporate veil and show that Mountaintop and Cameron Ellis are not separate entities. (*Id.*) In response, Twin Hollow filed the pending motion to dismiss on September 8, 2023. (ECF No. 25.) In turn, Murphy filed her response on September 22, 2023, (ECF No. 27), and Twin Hollow filed its reply on September 27, 2023, (ECF No. 30). Therefore, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

Murphy's complaint contains four counts. (ECF No. 21.) Only Count Two—Negligence—and Count Three—Joint Venture—apply to Twin Hollow. (*Id.*) Each count is addressed in turn, beginning with Joint Venture.

#### A. Count III—Joint Venture

Murphy alleges that Defendants Twin Hollow and Mountaintop "associated to carry out a single business enterprise for profit . . . whereby Defendants combined their property, money, effects, skill, and knowledge" and "contributed something promotive to the enterprise." (ECF No. 21 ¶ 44.) Under West Virginia law, such an enterprise is a "joint venture." *Armor v. Lantz*, 535 S.E.2d 737, 742 (W. Va. 2000).

Joint ventures are "an association of two or more persons" to "carry out a single business enterprise for profit," for which purpose the parties "combine their property, money, effects, skill, and knowledge." *Id.* These sorts of ventures require a contract, but it "may be oral or written, express or implied." *Id.* If the aforementioned elements are shown, the members of the venture are "jointly and severally liable for all obligations pertaining to the venture, and the actions of the joint venture bind the individual co-venturers." *Id.* at 743. In Murphy's amended complaint, Murphy fails to put forth facts that meet the requisite showing of a joint venture between Defendants Twin Hollow and Mountaintop.

As this Court held before in this case, to succeed on the joint venture claim, "Murphy would need to allege facts demonstrating that there is a real and binding 'agreement' to 'share in the profits and losses' of the enterprise." (ECF No. 20 at 5 (quoting *Pyles v. Mason Cnty. Fair, Inc.*, 806 S.E.2d 806, 812 (W. Va. 2000).) However, Murphy fails again to do so. There is no explicit agreement alleged between Defendants Twin Hollow and Mountaintop nor is there an inference of such an agreement in the amended complaint. The only allegation by Murphy relating to such is that Defendants Twin Hollow and Mountaintop "share the point-of-sale credit/debit card system for guest reservations and purchases." (ECF No. 21 at 9, ¶ 46(b).) However, simply because one entity collects the money for the other, it cannot be inferred that there is a sharing of profits. *See Amor*, 535 S.E.2d at 744 (citing *Fitzgibbon v. Carey*, 70 Or. App. 127 (1984) (finding joint venture between law firms when, amongst other things, there was an agreement to divide fees equally) (citing *Floro v. Lawton*, 187 Cal. App.2d 657 (1960) (finding joint venture based upon an agreement between lawyers to share fees equally)). Since the "sharing of profits is generally considered essential to the creation of a joint []venture," Murphy's failure again to demonstrate that an agreement to do so exists, is detrimental. *Pownall v. Cearfoss*, 40 S.E.2d 886–94 (W. Va. 1946).

Even where there is no explicit agreement, courts have found joint venture where there is a mutual benefit conferred to all defendants involved. *Sipple v. Starr*, 520 S.E.2d 884, 892 (W. Va. 1999). In *Sipple v. Starr*, the Supreme Court of Appeals of West Virginia held that a gas station, operated by Petroleum Products Incorporated ("PPI"), and a convenience store, owned by David Starr, were engaged in a joint venture, despite there being no direct sharing of profits. In that case, PPI and Starr entered into an agreement in which Starr would sell PPI gasoline to customers of the convenience store. *Id.* To support such an endeavor, PPI provided the store with

5

the property needed to sell gasoline as well as the skill and knowledge to do so. *Id.* Additionally, the cashier for the convenience store was also an attendant for the gas operation. *Id.* The court found that a mutual benefit could be inferred because customers attracted to the store for non-gas purposes may purchase gasoline that benefits PPI. *Id.*

Here, Murphy's amended complaint does not allege similar facts. Rather, all that is alleged is that Defendant Cameron Ellis "managed both Twin Hollow and Mountaintop"; that "all Defendants' [*sic*] share in the care and maintenance of property"; and "that each defendant performed functions for and on behalf of the other, such as marketing using a shared website, taking reservations, tending to guest needs, sharing employees for maintenance, management, and caretaking of each defendants' property and assets." (ECF No. 21 at 9, ¶ 46(a), (c).) Unlike in *Sipple*, these allegations are more akin to bare legal conclusions, rather than concrete allegations suggesting which parties engaged in which tasks. For instance, Murphy does not provide any factual allegations as to what role Defendant Cameron Ellis had in the operation of Twin Hollow. The allegations Murphy provides are "insufficient to state a claim." *King*, 825 F.3d at 214 (quoting *Iqbal*, 556 U.S. at 679).

Further, while Twin Hollow's advertisement of Mountaintop may promote Mountaintop's tours, as found by this Court previously in this case, "there is nothing gained on Twin Hollow's end." (ECF No. 20 at 6.) This is essential because a joint enterprise requires "each party" to contribute something of value to a "common undertaking." *Armor*, 535 S.E.2d at 743 (citation omitted). Yet, the amended complaint fails again to allege that Mountaintop may have contributed anything to Twin Hollow, nor is there anything to suggest that Twin Hollow has another source of profit, other than that coming from its own business. As this Court has already found in this case, "the promotion of another local business is not a sign of a joint venture." (ECF No. 20 at 6.)

Additionally, to find a joint venture, it is necessary that the parties have "equal control over the common commercial pursuit." *Armor*, 535 S.E.2d at 745. Here, aside from the bare legal conclusions above, there is nothing alleged in the amended complaint to suggest that Twin Hollow has any control with regard to the operations of Mountaintop or vice versa. Rather, Murphy alleges that "Defendant Mountaintop was taking guests on guided tours," (ECF No. 21 at 7, ¶ 40(b)), that "Defendant Cameron Ellis as the manager and acting agent of Defendant Mountaintop actively participated in Defendant Mountaintop's management," (*Id.* at 10, ¶ 53), and that "Defendant Cameron Ellis operated Defendant Mountaintop as a mere alter ego of himself," (*Id.* at ¶ 56.) While Mountaintop was described as being on Twin Hollow's property, that is insufficient to support an allegation of joint venture. *See Pyles*, 806 S.E.2d 806 (finding, *inter alia*, an agreement between the county commission to allow a private fair corporation to hold their fair on the county commission's land did not establish a joint venture). Sharing property may be a "feature" of a joint venture, but it is not alone sufficient when the other features that "must be combine[d]"—"money, efforts, skill, or knowledge"—are absent. *Armor*, 535 S.E.2d at 743 (citation omitted).

The allegations in the amended complaint fail to state a plausible joint venture claim. Murphy's new assertions of bare legal conclusions are insufficient to overcome this. *See Iqbal*, 556 U.S. at 678. Count III is therefore dismissed.

B. *Count II—Negligence Against Twin Hollow*

The entire cause of action for negligence arises out of the horse incident that occurs while Murphy was on a tour with Mountaintop. To succeed on a negligence claim in West Virginia, a plaintiff must establish, by a preponderance of the evidence, that first, the defendant owed the plaintiff a duty; second, the defendant negligently breached that duty; and third, the defendant's breach proximately caused the plaintiff's injuries. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d

7

546, 551 (W. Va. 2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)).  Here, Murphy fails to establish that Twin Hollow ever owed a duty to Murphy. By failing to allege facts sufficient to establish the first rung of the negligence ladder, Murphy is unable to climb the rest of the way.

In her amended complaint, Murphy alleges that "Defendant Twin Hollow, as owners and/or operators of the premises in which Defendants operated, had a duty to ensure the safety of its guests and invitees while on the premises."  (ECF No. 21 at 7, ¶ 39.)  Although true as a matter of law, such fact is irrelevant here because the tours did not occur on Twin Hollow's premises.  (*See* ECF No. 21 at 5, ¶ 28 (referencing "returning to the campground" following the tour).)  *See Haddox v. Suburban Lanes, Inc.*, 349 S.E.2d 910, 913–14 (W. Va. 1986) (finding that in order for defendant to be held liable for plaintiff's injuries, defendant must have "negligently failed to keep its premises in a reasonably safe condition."); *see also Hersh v. E-T Enters., Ltd. P'ship*, 752 S.E.2d 336, 343–49 (W. Va. 2013), *superseded by statute on other grounds*, W. Va. Code § 55-7-27 (explaining the duty of cared owed to invitees *on* the defendant's premises).

Moreover, Mountaintop was the one providing the guided tours.  (ECF No. 21 at 8, ¶ 40(f).) As indicated above, Murphy makes no allegations in her amended complaint to suggest that Twin Hollow had any control or management with the guided tour led by Defendants Mountaintop and Cameron Ellis that allegedly resulted in the injury sustained by Murphy.  Instead, in her amended complaint, Murphy alleges that that the "guided tours were offered by Defendant Mountaintop." (ECF No. 21 at 3, ¶ 9; *see id.*, at 3, ¶ 15).)  While it is alleged that Cameron Ellis managed Mountaintop and Twin Hollow, there is no allegation that while he was operating the guided tour, he did so while metaphorically wearing his Twin Hollow cap, rather than his Mountaintop cap. (*See* ECF No. 21 at 6, ¶ 34 (stating that Mountaintop allegedly led the guided tours).)

Since Murphy has failed to establish that Twin Hollow owed a duty to Murphy while on her tour led by Mountaintop, Murphy's negligence claim against Twin Hollow must fail.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** the pending motion to dismiss. (ECF No. 25.) The Complaint as against Twin Hollow is hereby **DISMISSED**, with prejudice. The counts against the other defendants remain pending.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 25, 2024

_____
THOMAS E. JOHNSTON, CHIEF JUDGE